**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JASMINE GRAY,

                         Plaintiff,

         - against -

MYRON X. DUMMITT, et al.,

                        Defendants.
---------------------------------------------------------X

         **MEMORANDUM**
         **AND ORDER**

         CV 06-0322 (ERK) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

       Plaintiff Jasmine Gray ("Gray"), who formerly received foster care from defendant City of New York (the "City"), has sued the City and a number of individuals and entities who were involved in providing such care over the years for their alleged violations of Gray's constitutional rights. *See generally* Docket Entry ("DE") 1 (Complaint). In a motion that does not address the merits of Gray's claims, several defendants now seek to disqualify the law firm of Lansner & Kubitschek (the "Firm") from serving as Gray's counsel and to invalidate the Firm's retainer agreement with Gray (the "Retainer") on the ground that the Retainer is unethical and jeopardizes the integrity of the litigation. DE 92-2 (Notice of Motion).[1] Specifically, the movants contend that the Retainer's provision regarding the Firm's role in handling settlement negotiations creates a conflict of interest that may harm them by frustrating a settlement and needlessly increasing the costs of this litigation. For the reasons discussed below, I agree that the Retainer is unethical and may not be enforced but disagree that the latter finding requires the disqualification of Gray's counsel of choice. I therefore grant the motion in part and deny it in part.

---

[1] In addition to the City, the movants include defendants Angel Guardian Children and Family Services, Jacqueline McKelvey, Sabina Sabina, Bernetta Mazah, Diana Cortez, Jackie Roth, Steven Bieber, Michael Miller, Kathryn Croft, Nicholas Scopetta, William Bell, and John Mattingly. *Id*.

I.    Background

On January 23, 2006, in anticipation of filing the instant lawsuit, Gray executed the

agreement by which she retained the Firm to represent her in this case.  Because the Retainer's

fee provisions are at issue in this motion, I reproduce them here in full:

> I understand that I will not have to pay any attorneys' fees to my attorneys
> unless I win or settle the case.  If I win or settle the case, the amount of attorneys'
> fees will be determined in the following ways.  (In this agreement, the term "total
> of all sums recovered" means the total of the sums that I recover, plus all
> attorneys' fees and costs recovered, less any out-of-pocket disbursements.  "I"
> means myself and anyone else on whose behalf I am suing.)
>
> If I win a judgment under state law only, my attorneys will be entitled to
> one-third of the total of all sums recovered.  If I win a judgment under federal law
> or both federal and state law, my attorneys will seek to obtain attorneys' fees from
> the defendants under the Civil Rights Law.[2]  If the amount awarded by the judge
> and paid by the defendants in fees is insufficient to total one-third of the total of
> all sums recovered, the remainder will come from my share of the judgment.
>
> If I settle the case, I agree that my recovery may be settled separately from
> the attorneys' fees.  If there are any settlement discussions, I agree that in such
> discussions the issues of the merits of the lawsuit and any statutorily-authorized
> attorneys' fees award may be treated and negotiated separately and that any
> settlement offer may treat these issues separately.  The fees in such an event will
> be based upon the attorneys' time and hourly rates and may be more than one-third
> of the total of all sums recovered.  The hourly rates for all work are as follows
> David J. Lansner and Carolyn Kubitschek: $375.00.  Other attorneys: $175.00-
> $300.00.  Social workers: $125.00.  Law graduates: $125.00  Law students:
> $100.00  Messengers: $25.00.  If the Firm raises its regular rates, the hourly fee
> will also be raised equally.  I further agree that if the defendants make a settlement
> offer that would require my attorneys to take less than their full fees under the
> Civil Rights Law, my attorneys may reject the offer or seek the opinion of the
> judge regarding the reasonableness of the fee.  Only if the judge determines that
> the proposed fee award is reasonable will I respond to the settlement offer.

DE 92-3 (Affidavit of Gino A. Zonghetti) ("Zonghetti Aff.") Ex. F (Retainer) at 1-2.

---

[2]  The Retainer does not define the term "Civil Rights Law."  In context, the term appears to refer
to 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party ... a
reasonable attorney's fee as part of the costs").

Gray filed her complaint two days later. I held an initial conference on June 1, 2006 and set a schedule that contemplated the close of discovery on February 11, 2007. DE 22; DE 23. Since then, at the parties' requests, I have granted three extensions of the discovery deadline. *See* DE 55; DE 69; DE 91.

One of several discovery disputes that engendered such delay gave rise to the issue now before me. On April 10, 2007, the defendants moved to compel Gray to respond to written interrogatories and withdraw certain questions in connection with an earlier deposition. DE 61. Four days later, the defendants supplemented their application with, among other things, an application to compel Gray to produce a copy of her retainer agreement. DE 65. At a conference before me on April 30, 2007, I ordered the Firm to submit the Retainer *in camera* so that I could assess Gray's claim that attorney-client privilege protected it from disclosure. DE 68. After review, I granted the defendants' motion and ordered Gray to produce the Retainer in unredacted form. DE 70. Shortly thereafter, the defendants requested a pre-motion conference in contemplation of filing the instant motion and I granted the application over Gray's objections. Electronic Order dated May 10, 2007; *see* DE 71-72.

At my direction, Gray herself attended the pre-motion conference on June 4, 2007, along with her attorneys, so that I could ascertain the extent to which she understood and wished to be bound by the Retainer's provisions regarding settlements. *See* DE 86 (Transcript of Proceedings held on June 4, 2007) ("Tr."). Some of the statements Gray made during our colloquy gave me pause in that regard. First, in describing why she wished to be bound by the Retainer, she gave an extended answer about the perceived merits of her claims and her counsel, Tr. 6-7, and then, when asked to focus on the Retainer itself, said, "I think this is a good contract that *my lawyers*

*made me sign*." Tr. 7 (emphasis added). When I asked about the highlighted portion of the latter statement, Gray quickly retracted it. *Id*.

Second, Gray expressed what appeared to be a belief that she has an agreement with her attorneys that she will be informed of any settlement offer: "I had a conversation with my attorneys, and if they [the defendants] are willing to offer something, they [the Firm's attorneys] will ask me." Tr. 9. Her understanding in that regard is contrary to the text of the Retainer itself. *See* Retainer at 2 ("if the defendants make a settlement offer that would require my attorneys to take less than their full fees under the Civil Rights Law, my attorneys may reject the offer").

Third, Gray articulated her understanding that in some instances, pursuant to the Retainer, she and her attorneys might disagree as to whether a settlement offer should be accepted, and that in such circumstances, the disagreement would be submitted to a judge rather than resolved by deference to her own wishes. Tr. 9 ("If I agree with [a settlement offer] and they [the Firm's attorneys] don't, I don't know how that's going to work out.... My lawyers will probably go to the judge or something. I don't know."). When I tried to explain that normally a client has the final say over whether to accept a settlement offer, but that the Retainer appears to take away some of that discretion, Gray responded "Yes, I understand. I agree." Tr. 10.

Despite my concerns about certain aspects of Gray's understanding of the Retainer's settlement provisions, it was clear to me that Gray understood that she was giving up certain rights to have the Firm represent her, including some rights that might affect the extent of her monetary recovery, and that she nevertheless wished to have the Firm continue to represent her. Tr. 11-13.

For their part, Gray's attorneys asserted that the Firm's standard practice is to communicate all settlement offers to its clients, notwithstanding its right under the Retainer's explicit terms to reject certain offers unilaterally. Tr. 13. In addition, Gray's counsel asserted that in circumstances in which a client wishes to accept a settlement that would result in her attorneys getting less than what they perceive to be fair compensation, it is appropriate for the attorneys to require the client to discuss the matter with the court rather than acceding to the client's wishes. Tr. 20-21. In the event that the court to whom Gray and her attorneys looked for guidance on the matter declined to provide it, the attorneys did not know whether they would take the position that they could reject the offer or would have to accede to their client's desire to accept it. Tr. 27-30. After considerable difficulty in securing an answer, I finally ascertained that Gray's attorneys take the position that, pursuant to the terms of the Retainer, there are circumstances in which they can unilaterally reject a settlement offer that Gray herself wishes to accept, on the ground that the resulting fee would be insufficient. Tr. 31-32. In light of that position, I granted the defendants leave to file the instant motion. Tr. 32.

II.   <u>Discussion</u>

    A.   <u>Threshold Issues</u>

        1.   <u>The Defendants Have Standing</u>

Gray argues that the movants have no standing either to challenge the Retainer or to seek her counsel's disqualification. For the reasons discussed below, I disagree on both counts.

When an attorney's unethical conduct prejudices the process of litigation, it can impair the legitimate interests of a party adverse to the attorney's client in a fair adjudication of that party's claims or defenses. Such a party therefore has a personal stake in remedying the situation. *See,*

*e.g.*, *Colyer v. Smith*, 50 F. Supp. 2d 966, 971-72 (C.D. Cal. 1999). That personal stake suffices to satisfy the "irreducible constitutional minimum" of the standing requirement. *Id.*

Viewed in this light, the movants who now challenge as unethical the conduct of Gray's counsel are not seeking to vindicate Gray's right to conflict-free counsel; they are instead seeking to vindicate their own right to an adjudication of the lawsuit against them unburdened by the taint of the Firm's alleged misconduct. In addition, they seek to avoid the burden of protracted litigation that they believe the Retainer improperly causes them to bear. Accordingly, they have standing, and the doctrine of *jus tertii* is no bar to their motion.

Even if the movants lacked standing to seek relief based on their view that the Retainer is unethical, Gray's standing objection would nevertheless raise no bar to my consideration of the matter. This court has an independent institutional responsibility to supervise the members of its bar and to exercise sufficient control of their conduct to "preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks and citations omitted). From that responsibility springs the court's obligation to intervene when a conflict of interest impairs an attorney's representation of her client. *Dunton v. County of Suffolk*, 729 F.2d 903, 908-09 (2d Cir. 1984). Regardless of how the matter was brought to my attention, once I become aware of an attorney's potential conflict in a case to which I am assigned, I must inquire into the existence of the conflict and take any appropriate steps needed to alleviate any harm arising from it. That institutional responsibility obviates any concern about the movants' standing to seek relief: even if they sought no relief, I would still have an obligation to ameliorate any taint attributable to an attorney's unethical behavior.

Nor can there be any question that the movants, having learned of the Retainer's terms, have the right and even the obligation to bring their concerns to my attention. Indeed, both the movants and their attorneys are so empowered. A party may bring potential ethical violations to the court's attention through a motion seeking disqualification or for other relief. *See In re Fischer*, 202 B.R. 341, 352 (E.D.N.Y. 1996) (collecting cases). In addition, a party's attorney has an independent obligation as an officer of the court to bring ethical violations to the court's attention. *Dunton*, 729 F.2d at 909. An attorney with unprivileged information about a colleague's violation of a disciplinary rule or conduct "prejudicial to the administration of justice" must report such information "to a tribunal or other authority empowered to investigate or act upon such violation." New York Lawyer's Code of Prof'l Responsibility ("New York Code") DR 1-103(A); *see also* DR 1-102 (defining attorney misconduct).[3] The movants' attorneys having done so in this case, it does not matter whether they or their clients would otherwise have standing to seek relief. *See Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 923-24 & n.4 (N.D.N.Y. 1987) (holding that counsel's ethical duty creates independent standing). What matters is that the movants' counsel have properly raised the matter, and that I must therefore address it on the merits to the extent it is ripe for such review.

---

[3] Attorneys practicing in this court are subject to the provisions of the New York Code as adopted by the Appellate Divisions of the State of New York and as interpreted and applied by the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and this court. Loc. Civ. R. 1.5(b)(5). As a convenient shorthand, I refer to the New York Code by citing the relevant provision itself rather than the corresponding portion in the official codification of New York's statutory law (*e.g.*, "DR 1-103(A)" rather than "N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.4(A)").

## 2.    The Issue Is Ripe For Review

Gray further objects to my adjudication of this dispute because she contends that such review is premature.  Again, I disagree.

The concept of ripeness has both constitutional and prudential components.  To be susceptible of determination consistent with Article III of the Constitution, a dispute between parties must not only be "concrete" but must affect "cognizable current concerns[.]" *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 545 (2d Cir. 2007) (quoting *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003)) (internal quotation marks and citations omitted) (alteration in original).  On the other hand, a court will as a prudential matter consider a dispute unripe for review if it concludes "that the case would be better decided later and that the parties' constitutional rights [would not be] undermined by the delay." *Id*. at 546 (same; internal quotation marks and citations omitted; alteration in original).

Applying these principles, I conclude that it is consistent with both the Constitution and the prudential doctrine of ripeness to resolve now the propriety of the Retainer and the motion for disqualification.  Wholly apart from the merits of the movants' ethical arguments, it is clear that the Retainer's allocation of rights with respect to settlement has an impact on the litigation, and on the legitimate interests of the parties, right now.  Most obviously, the Retainer creates a potential obstacle to settlement negotiations that would not exist if the movants secured either form of relief they seek:  as things currently stand, the Firm can unilaterally reject settlement terms that the parties themselves might find desirable.  That will not be the case if the Firm is disqualified or if the Retainer is determined to be unenforceable.  Even without speculating about the terms on which the parties *might* settle but for the Retainer's provisions, it is manifest that the

Retainer's reservation of certain rights to the Firm – both with respect to settlement negotiations and with respect to the Firm's compensation – creates an incentive for the Firm to increase the costs of this litigation that would not otherwise exist. Regardless of whether the Firm acts on that incentive, the defendants have reason to be concerned that any pretrial dispute that crops up reflects the Firm's incentive to litigate rather than their opponents' view of the merits; that concern may itself cause the movants to be less amenable to the consensual resolution of such disputes.[4] In short, the movants' assertion that the Retainer is unethical raises an issue that affects cognizable current concerns and may therefore properly be decided now.[5]

B.     The Retainer Is Unenforceable

Having determined that the instant motion is properly before me and is ripe for review, I now turn to its merits. As explained below, I conclude that the Retainer improperly curtails Gray's exclusive right to settle her claims on terms she finds acceptable. Specifically, the Firm has improperly arrogated to itself the right to reject any settlement offer that would result in

---

[4] It is no answer to note that ethical attorneys are often faced with circumstances in which advancing their clients' interests through consensual resolution of a dispute will be contrary to the attorneys' own economic interests. I do not presume that the Firm is acting unethically simply because it has an economic incentive to multiply the proceedings; rather, I merely acknowledge that to the extent the Firm has such an incentive, it has an effect on the proceedings now that renders the movants' assertion of unethical conduct ripe for review.

[5] One other threshold issue is that of my authority to decide the instant motion rather than merely recommend a disposition. At the pre-motion conference, Gray's counsel objected that I lack such authority. *See* Tr. 33. Notwithstanding counsel's view that the Firm is so nearly irreplaceable that its disqualification would be tantamount to the dismissal of Gray's claims, *see* Tr. 33-34, there can be no reasonable dispute that this pretrial motion is neither "dispositive" within the meaning of Federal Rule of Civil Procedure 72, nor among those explicitly listed in the statutory reservation of certain motions for decision by a district judge. *See* 28 U.S.C. § 636(b)(1)(A). As a result, the resolution of this non-dispositive pretrial motion is presumptively within my mandate as the magistrate judge assigned to this case. *See* Loc. Civ. R. 72.2(a). Counsel's objection was thus plainly unfounded, and Gray appears on reflection to have abandoned it.

Gray's attorneys receiving "less than their full fees under the Civil Rights Law[.]"  Retainer at 2.

Moreover, the Retainer creates a problematic conflict of interest between Gray and her attorneys

that produces an incentive for the latter to compromise their independent professional judgment.

Each of these problems appears to spring from the incorrect assumption that the relevant federal

statute confers on the Firm itself an independent enforceable right to secure its fee.  Because it

does no such thing, the Firm's efforts to protect that illusory right by means of its contract with

Gray produce a result that the rules of attorney ethics forbid.  As a result, the Retainer is void.

> 1.  The Retainer Improperly Curtails Gray's Exclusive
> Settlement Authority

A client is the sole arbiter of the decision to settle his claims; the client's lawyer may offer

counsel on that issue, but under no circumstances may she substitute her own judgment for her

client's.  DR 7-101(A)(1) (a lawyer "shall not intentionally ... [f]ail to seek the lawful objectives

of the client").  The codes of professional conduct could not be more plain:  a lawyer's authority

to make decisions on the client's behalf is confined to areas of representation that do not affect

the merits of the case or the client's rights, and the lawyer must obey the client's decisions in all

other respects.  EC 7-7; *see also* Model Rules of Prof'l Conduct R. 1.2(a) (2007).  A client may

delegate some of her settlement authority to her lawyer through written agreement, but only after

giving informed consent – namely, after full disclosure of all the implications and potential

outcomes of such delegation and a full and frank discussion of the merits of the case.  *See*, *e.g.*,

N.Y. State Bar Ass'n Formal Op. 760 (2003) (client may delegate to attorney permission to reject

settlement offers below a specified threshold).  Informed consent is virtually impossible in the

early stages of representation:  a lawyer has minimal information and cannot provide enough

information to the client to secure the latter's valid consent to a delegation of settlement authority; to the extent that a retainer agreement purports to contain a delegation of such authority, the delegation is invalid. *Id.*

Regardless of informed consent, an attorney may not oblige her client to get the attorney's consent before accepting a settlement agreement. N.Y. County Law Ass'n, Op. No. 699 (1994). Similarly, a lawyer is duty-bound to communicate all settlement offers to the client; withholding information "effectively arrogate[s] to the attorney" the client's exclusive right to decide whether to accept or reject an offer to settle her claims. N.Y. County Law Ass'n, Op. No. 667 (1988).

The Retainer expressly authorizes the Firm to reject some settlement offers without first informing Gray. By doing so, it plainly curtails Gray's right to be informed of all settlement offers and the Firm's corresponding obligation to communicate offers to her. When Gray executed the Retainer – two days before she filed her Complaint – the Firm could not possibly have had enough information about the case to obtain Gray's informed consent for a delegation to them of her authority to reject offers below a certain threshold, let alone the more extensive delegation of settlement authority that the Retainer actually effects.

Gray might well wish to accept a settlement offer conditioned on a fee waiver if the amount were high enough, as she has a right to do; and yet the Retainer's explicit language allows the Firm unilaterally to reject such an offer without regard for Gray's wishes. At the conference before me on June 4, 2007, one of Gray's attorneys, David Lansner ("Lansner") "agree[d] that there is a duty to inform [Gray] of any offer that's made and it is [their] practice to always do that[.]" Tr. 13. Lansner went on to say that "if this isn't clear, I can state clearly for the record now that we would inform our client of any offer that is made." *Id.* While I conclude from the

11

colloquy that Lansner personally understands his ethical duty to convey any settlement offer, his assurance in that regard does not overcome the plain meaning of the Retainer's text.[6]

Further, the Retainer effectively obliges Gray to obtain the Firm's consent before even responding to a settlement offer conditioned on a partial or full fee waiver. Upon receiving such an offer, the Firm can elect to reject it outright, or it can present the question of the reasonableness of a proposed fee to the judge. Only if the Firm unilaterally decides to seek the judge's view, and then only if the judge provides such a determination, does Gray enjoy a contractual right to respond to the settlement offer over her attorneys' objection. Further complicating matters, the Retainer does not specify when, if ever, the Firm *must* seek the judge's opinion; to the contrary, the contract commits that choice exclusively to the Firm's discretion – apparently without giving Gray any say in the matter.

Even assuming that the Firm would choose to seek the court's opinion – despite its contractual freedom not to do so, and instead to reject the offer outright without consulting Gray – the court would not necessarily provide one. Such an opinion could not bind any party or affect

---

[6] Moreover, despite Lansner's assurance, it is not clear that he speaks for his Firm. In addition to the fact that the Retainer itself plainly stakes out the Firm's right to reject certain settlement offers without consulting Gray, another member of the firm has previously advised placing just such a reservation of rights in retainer agreements. *See* Carolyn A. Kubitschek ("Kubitschek"), Social Worker Malpractice for Failure to Protect Foster Children, 41 Am. Jur. *Trials* § 41 (2004) (recommending that attorneys include in their retainers the following provision: "I further agree that if a settlement offer made by the defendant is contingent on my attorney foregoing a reasonable award of attorney fees, my attorney may reject the offer *without consulting me*, or may seek the opinion of the court regarding the reasonableness of the fee award.") (emphasis added). Kubitschek was present at the conference at which Lansner acknowledged his ethical duty to inform his client of any offer, and her silence at the time appeared to indicate her agreement with the proposition, notwithstanding the fact that it is irreconcilable with the explicit reservation of rights she has recommended to others.

any party's interest.[7]  Moreover, providing an advisory opinion about the reasonableness of attorneys' fees in the context of settlement negotiations – particularly in the context of the *ex parte* approach to the court that the Retainer appears to contemplate – would make it difficult, if not impossible, for the same judge to decide an actual dispute about the same issue that might later arise.  The court could therefore understandably refuse to provide the advisory opinion – thereby, pursuant to the explicit terms of the Retainer, extinguishing Gray's right to respond to the settlement offer over her attorneys' objection.[8]  If an attorney cannot unilaterally extinguish her client's right to respond to a settlement offer, neither can she do so indirectly by conditioning the exercise of that right on the willingness of a court to issue an advisory opinion.

      2.      <u>The Retainer's Delegation Of Settlement Authority Creates<br>A Potential Conflict Of Interest</u>

The Retainer does not define the Firm's "full fees under the Civil Rights Law," nor could it do so.  In light of the fact that 42 U.S.C. §1988(b) explicitly commits to the discretion of the court not only the amount of fees to be awarded a prevailing party, but also the discretion to award no fees at all in exceptional circumstances, it is patent that no party to the Retainer could possibly be in a position, at the time of settlement negotiations, to predict the "full fees" that

---

[7]  Without an actual dispute between the *parties* – as opposed to one between Gray and her counsel – there is no case or controversy within the meaning of Article III of the Constitution, and "*that* principle forbids the giving of judicial advice in advance of such a real dispute." *Curtis v. Sullivan*, 1991 WL 256688, at *1 (N.D. Ill. Nov. 20, 1991) (emphasis in original); *see Lane v. Compass Group U.S.A., Inc.*, 2005 WL 2710165, *9 (D. Conn. Oct. 21, 2005) (declining to issue an advisory opinion on applicability of statutory fee provision before trial).

[8]  Lansner stated that he had not previously contemplated this possibility.  *See* Tr. 29-30.  Not having given the matter any thought before I raised it with them, it is necessarily true that Gray's attorneys had not previously considered whether the possibility of judicial restraint on the subject might render the Retainer unethical.

Gray might later be awarded "under the Civil Rights Law[.]"[9]  That ambiguity raises the specter

of a conflict of interest.  Absent a more precise definition of the kind of settlement offer to which

Gray may unilaterally choose to respond, the Firm has a disincentive to facilitate settlement:  as

the litigation continues (and the Firm's anticipated fees increase), it becomes ever more costly for

the defendants to make an offer that Gray is empowered to accept over her attorneys' veto.  As a

result, the more the Firm protracts the litigation, the more it arrogates to itself control of the

decision to settle on terms it finds satisfactory.  By contrast, in the absence of such a provision,

Gray would have unfettered authority to decide, for example, that the litigation has become

prohibitively expensive and that her interests would therefore best be served by settling the case

and taking responsibility for compensating the Firm, even if that meant committing funds beyond

those obtained in settlement.

I recognize, of course, that some potential for a conflict of interest between lawyer and

client inheres in all settlement negotiations, because the client has the authority to accept a

settlement offer that waives the lawyer's fees even if the settlement itself is less than the amount

needed to compensate the lawyer for her work.  *See* N.Y. County Law Ass'n, Op. No. 667 (1988);

---

[9]  The phrase could instead be intended to convey an amount based on the specific hourly rates set forth in the Retainer multiplied by the total number of hours worked – in other words, the amount that the Firm itself would ask (rather than the amount that might be awarded).  If that is the intended meaning, it seems unlikely that any settlement offer would fail to trigger the curtailment of Gray's right to respond.  That is both because such a definition would appear to contemplate no discounting of the Firm's fee (as opposed to Gray's own recovery) as part of a settlement, and also because the quoted hourly rates for the Firm's attorneys are at the very top of the those that have been awarded in this district pursuant to the relevant statute.  *See*, *e.g.*, *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, 2007 WL 4324019, *6 (E.D.N.Y. Dec. 7, 2007) (collecting cases); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007) (abandoning traditional "lodestar" calculations in favor of a totality-of-the-circumstances inquiry into the reasonable rate to which a paying client would agree)*.*

New York Code DR 5-101. Codes of professional conduct balance the threat to the lawyer's fees against the lawyer's absolute duty to execute the client's lawful objectives: consistent with the lawyer's role as advisor, the lawyer may ask her client not to waive fees as part of settlement and advise her client about the consequences of accepting a settlement offer that leaves the lawyer without adequate compensation. *See* Ass'n of the Bar of the City of New York, Formal Op. 1987-4 (1987) (attorney must balance interest in reasonable compensation against duty of loyalty). If the lawyer's fees are unpaid at the culmination of litigation in settlement or otherwise, the lawyer has statutory protection in the form of a charging lien; this is the lawyer's sole recourse against a delinquent client. *Burrell v. City of Binghamton*, 1989 WL 29878 (N.D.N.Y. March 24, 1989); *see* N.Y. Judiciary Law § 475 (McKinney 2005) (attorney's charging lien).

The potential for a conflict of interest between attorney and client is exacerbated in the context of civil rights cases such as this one, where a prevailing plaintiff enjoys the statutory right to recover her attorney's fee. But the conflict does not arise by virtue of the fee-shifting statute itself, because the statute does no more than create a right for the client – it creates no right for the attorney as such. *See Evans v. Jeff D.*, 475 U.S. 717, 730-31 (1986) ("Congress bestowed on the prevailing *party* ... a statutory eligibility for a discretionary award of attorney's fees" (emphasis in original) (internal quotation marks omitted)); *see* 42 U.S.C. § 1988(b). Rather, the potential for a conflict arises when a defendant seeks to settle a case by persuading the client to accept – as the client is unquestionably entitled to do – a settlement that makes little or no provision for the attorney's fee. *See Venegas v. Mitchell*, 495 U.S. 82, 88 (1990); *Soliman v. Ebasco Svcs, Inc.*, 822 F.2d 320, 322-23 (2d Cir. 1987) (attorneys have no right to claim fees without clients' authorization; the extent to which fees awarded under § 1988 "ultimately end up

in the lawyer's or the client's hands depends ... on the private fee arrangements entered into between them when representation is undertaken").

There is no doubt that defendants in civil rights cases have the ability and even the incentive to exploit that tension. But that reality neither alters an attorney's ethical duties nor excuses him from honoring them. The ethical rules suffice to permit the attorney to protect his legitimate interest in a reasonable fee without sacrificing his client's right to control settlement decisions.

It is in that respect that the meager authorities on which the Firm relies in defending its Retainer are wanting. The Firm cites the opinions of scholars and bar committees to support the proposition that it is appropriate for attorneys to protect themselves against being short-changed as the result of a client's decision to settle. *See* DE 88 (opposition memorandum) at 9-11 (citing 2 Schwartz and Kirklin, *Section 1983 Litigation* 459 (1997) (concluding that it is appropriate for attorneys to insist on a "no-fee-sacrifice provision in the retainer agreement"); Association of the Bar of the City of New York, Formal Opinion 87-4 (1987) (an attorney representing a plaintiff in a § 1983 case need not "agree to the waiver or negotiation of a reasonable fee" and is free to agree "in advance with his or her client that there will be no such waiver or negotiation"); State Bar of Cal. Standing Committee on Prof'l Responsibility & Conduct, Formal Op. No. 1994-136 (1994) (permitting retainer agreement that conveys to counsel the client's right to apply for and receive award of fees)). Such argument misses the point. The question is not whether it is appropriate for attorneys to protect their interest in fair compensation when embarking on the representation of a plaintiff asserting a civil rights claim, the question instead is whether an attorney can protect that legitimate interest through the otherwise illegitimate arrogation of the

client's right to accept or reject a settlement offer. The answer to that question must be "no," particularly in light of the alternatives available to protect the lawyer's interest without sacrificing the client's.

In discussing a settlement offer with her client, the attorney for a civil rights plaintiff may note the risks attendant to accepting an offer that waives the client's right to seek the reimbursement of fees – but if the client nevertheless decides to accept a settlement offer waiving fees, the lawyer is absolutely bound to execute the client's wishes. *See Evans v. Jeff D.*, 475 U.S. 717, 755-56 (Brennan, J. dissenting) (citing Model Rules of Prof'l Conduct). Even before an offer is made, the attorney can protect her investment of time and resources on the client's behalf by negotiating a fee agreement that binds the client to pay the attorney at a certain hourly rate regardless of the amount the client succeeds in recovering from the defendant in settlement or judgment – so long as that agreed-upon fee is reasonable. *See Venegas v. Mitchell*, 495 U.S. 82, 87-88 (1990); *Uy v. Bronx Municipal Hosp. Ctr.*, 182 F.3d 152, 156-57 (2d Cir. 1999) (court-awarded fees do not limit the fees available to an attorney under a private retainer agreement).[10]

---

[10]    Alternately, the attorney may ask her client to promise a specific percentage of any recovery, without resort to an hourly rate. Indeed, the Retainer at issue in this case includes just such a provision, albeit only with respect to the prospect of a judgment in Gray's favor (as opposed to a settlement). If Gray proceeds to trial and secures a favorable judgment, and if the court then awards a "reasonable attorney's fee" pursuant to 42 U.S.C. § 1988(b) that is anything less than half of the total damages award, the Retainer requires Gray to pay her attorneys *more* than the fee determined by the court to be reasonable. For example, if Gray wins a damages award of $300,000 and the court awards an additional $100,000 in reasonable attorney's fees, then (leaving aside the question of other costs) Gray would have to pay her attorneys $133,333.33. In that scenario, the Retainer provides that the Firm would charge Gray, in addition to the reasonable fee determined by the court, one-ninth of the amount awarded to Gray specifically to compensate her for her injury. *See* Retainer at 1.

    Such an arrangement turns the court's determination of a reasonable fee into nothing more than the starting point for the attorney's demand, and it also diverts funds awarded exclusively to

Such an agreement can create a disincentive for the *client* to settle as the litigation progresses (as the amount of the settlement needed to satisfy the client's own desire for recovery increases the longer the proceedings go on), but it is the client who retains the right and the economic incentive to make appropriate decisions on her own behalf. By contrast, the settlement-related provision of the Retainer in this case arrogates such cost-benefit analysis to the Firm itself, and creates the risk that a client who wants to salvage what she can by accepting an offer may be unable to do so because she never even learns that the offer has been made.

3. The Settlement Provision Renders The Entire Retainer Unenforceable

As a result of the foregoing analysis, I conclude that the Retainer's provision regarding settlements is unenforceable. And for the reasons set forth below, the latter conclusion further compels me to conclude that I must find the entire Retainer unenforceable.

First, the Firm plainly viewed the protection of its interests in the event of settlement as material to its willingness to take on the role of Gray's counsel of record. As a result, I cannot

---

remedy the client's injury away from their remedial goal. Nevertheless, the relevant federal statute does not prohibit such a provision, *see Venegas*, 495 U.S. at 90 (1990) ("§ 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer"), and prior case law in this circuit teaches that it is not inherently unethical. *See Uy*, 182 F.3d at 157 ("The considerations that enter into whether a privately negotiated fee was 'excessive' under the disciplinary rule are very different from those used to determine an appropriate fee award under a fee-shifting statute."). In the wake of *Arbor Hill*, however, an arrangement like the one in the instant Retainer (which, I hasten to acknowledge, was executed before the decision in *Arbor Hill*) that can require a client to pay more to her attorney than the court deems reasonable for purposes of the federal statute may no longer be immune to ethical challenge. After *Arbor Hill*, a court considering a fee award under § 1988 must determine the reasonable rate that a paying client in the prevailing plaintiff's position would have agreed to pay. 493 F.3d at 117-18. An attorney's insistence on a higher rate than that is arguably excessive by definition, and therefore unethical. The movants do not make that argument, and in light of my disposition of their motion I need not and do not address it *sua sponte*.

simply read the provision out of the agreement. Without evidence that the Retainer's settlement provision is immaterial, excising it would bind Gray and the Firm to a contract not of their making. *See* Restatement (Second) of Contracts, § 184 (1981). I must therefore deem the entire agreement void.

Nor can I avoid that result by now securing Gray's informed consent to be bound to the Retainer's terms. If the Retainer's ethical violations affected only the relationship between Gray and the Firm, Gray could nevertheless make an informed decision to ratify it and be bound by its settlement provision. *See King v. Fox*, 7 N.Y.3d 181 (2006) (a client may ratify an unconscionable retainer agreement if first informed of the facts and ethical violations at issue). But, for the reasons explained above in discussing the question of justiciability, the risk created by the Retainer is not Gray's alone – it is a risk that falls just as much, perhaps more so, on the defendants.

I have searched in vain for a case or ethical opinion that affirmatively endorsed a retainer agreement with a provision similar to the one at issue here. The Firm has asserted that "[o]n scores of occasions, judges and magistrate judges of this district have approved settlement agreements ... with retainer agreements containing the identical language." DE 72 at 1; *see also* Opp. at 13 ("the provision in the [Retainer] to which movants object has been in retainer agreements presented to this Court and to the United States District Court for the Southern District of New York in infant compromise petitions in dozens of Section 1983 cases"). That assertion, which I assume to be true, tells me no more than that certain cases settled without the assigned judge raising *sua sponte* the ethical issue now before me. It does not stand as precedent for the proposition that the Retainer in this case is consistent with the ethical rules. Moreover,

despite the Firm's reference to "scores" of cases, it has specifically cited only six.[11]  DE 72 at 1.

A review of the dockets of those six cases reveals that each brought the retainer agreement before

the court, if at all, in the context of a settlement offer that had been presented to the plaintiff and

accepted; in none of the cases did any party bring to the court's attention any concern about the

propriety of the provision now at issue, and nothing suggests any reason for the court to have

considered the matter *sua sponte*.  In short, the cited cases have no useful precedential value.  In

the absence of any controlling or persuasive precedent supporting the Firm's position, I am

constrained to conclude that the Retainer is unenforceable.

      C.      <u>There Is No Need For Disqualification</u>

      While I agree with the movants that the Retainer is unenforceable, I do not agree with

them that the Firm must therefore be disqualified.  The latter issue, although informed by the

New York Code and the American Bar Association's Model Rules of Professional Conduct, is a

matter of federal law.  *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d

127, 132 (2d Cir. 2005).  In applying that law, a court must balance the client's right to the

counsel of her choosing against "the need to maintain the highest standards of the profession"

and generally resolve doubts in favor of disqualification.  *Gov't of India v. Cook Indus., Inc.*, 569

F.2d 737, 739 (2d Cir. 1978) (citations omitted).  In particular, disqualification is appropriate if

an attorney's conflict of interest impairs his independent judgment and creates an appearance of

impropriety that undermines confidence in the vigor of the representation, and also if the conflict

---

[11] *Brailey v. Eweka*, docket no. CV 02-0681 (E.D.N.Y.). *Berisha v. Scoppetta*, docket no. CV 02-1142 (E.D.N.Y); *Bob v. Bell*, docket no. CV 03-1891 (E.D.N.Y); *Caban v. Bell*, docket no. CV 03-1859 (E.D.N.Y.); *Devalle v. Scoppetta*, docket no. CV 03-0483 (E.D.N.Y.); *Kelly v. Bell*, docket no. CV 03-2180 (E.D.N.Y.).

is so grave a breach that the client's decision to retain him significantly damages the adversary process. *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations omitted); *Dunton v. Suffolk County*, 729 F.2d 903 (2d Cir. 1984).

On the other hand, a mere "appearance of impropriety is simply too slender a reed" to justify the drastic sanction of disqualification. *Id.* Indeed, disqualification is in many cases an inapt remedy for the harm caused by an attorney's violation of a professional rule. At both the federal and state levels, the relevant bar authorities have a "comprehensive disciplinary machinery" that is often better suited to the task of imposing an appropriate sanction than is court-ordered relief that can needlessly punish a faultless client. *See Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Accordingly, the moving party bears the "heavy burden" of demonstrating that disqualification is necessary. *Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir. 1983); *see also European Community v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 303-05 (E.D.N.Y. 2001) (discussing high standard for disqualification). Under that standard, I cannot conclude that the Firm must be barred from continuing to represent Gray.

The Retainer's settlement provision improperly transfers Gray's decision-making authority to the Firm, and thereby creates a potential conflict of interest. But that conflict disappears once the Retainer is deemed void. What remains is a potential obstacle to settlement that inheres in any civil rights litigation subject to the fee-shifting provision of 42 U.S.C. § 1988: the possibility that counsel's legitimate interest in securing fair compensation for the work she performs on a client's behalf will raise the price that the *client* will demand either in connection with a settlement or a contested fee application. If the defendants believe that Gray seeks too much reimbursement for her attorneys' work because the Firm has unreasonably protracted the

litigation, they have a variety of options that suffice to vindicate their rights: they can seek to persuade Gray to waive such reimbursement, or, failing that, they can continue to litigate the case and, if necessary, challenge any later fee application as unreasonable. But once the right to decide on settlement terms is properly restored to Gray, there is no longer any harm to the defendants, going forward, arising from the improper Retainer. Disqualification is therefore unnecessary to prevent future harm.

It is also completely ineffective in providing redress for any past harm. To the extent that the defendants have already suffered a cognizable injury as a result of the Retainer's creation of a disincentive to settle and an incentive to increase their litigation burdens, the harm is done and will not be undone by now disqualifying the Firm. Moreover, to the extent that the invalidation of the Retainer may affect Gray's obligation to compensate the Firm for the work already performed, that invalidation will provide sufficient relief – and disqualification will add nothing more of value to the defendants.[12]

Despite my concern that the Retainer's fee provision creates the potential for a conflict of interest, I have no concern about the vigor with which the Firm has represented Gray's interests in this litigation. Moreover, Gray has repeatedly and unreservedly affirmed her wish to be

---

[12]  I need not and do not pass on the fee that the Firm may now charge Gray for its services, either for the work done on her behalf to date, or for future work pursuant to a new retainer agreement. I recognize, of course, that New York law requires an attorney who expects the total value of her legal services to exceed $3,000 to enter into a written retainer agreement. *See* 22 N.Y. Comp. Codes R. & Regs. §§ 1215.1, 1215.2 (2007). But the absence of such a retainer does not necessarily preclude the payment of a greater fee; under certain circumstances, New York law also permits an attorney to recover in *quantum meruit* the fair and reasonable value of her services. *Seth Rubenstein, P.C. v. Ganea*, 833 N.Y.S.2d 566, 570, 572 (N.Y. App. Div. 2007) (collecting cases). At any rate, the matter is one for Gray and the Firm to address in the first instance, consistent with the constraints of the Firm's ethical duties.

represented by the Firm, even after I explained the potential conflict to her. *See* Tr. 6; Lansner Aff. Ex. B. Indeed, given the vehemence with which she has expressed that preference, I have grave concern that Gray could, at this stage of the proceedings, find substitute counsel whom she would trust sufficiently not only to pursue the litigation of this case, but also to advise her with respect to a settlement. In that sense, disqualification might do more harm than good in trying to remedy any problem that the Retainer has already caused.

III.    Conclusion

For the reasons stated above, I grant the motion in part and deny it in part; specifically, I find that the retainer agreement between plaintiff Gray and her counsel is unenforceable, but I decline on the basis of that finding to disqualify the plaintiff's counsel of record.

**SO ORDERED.**

Dated: Brooklyn, New York
          December 21, 2007

                                                    /s/ James Orenstein
                                                    JAMES ORENSTEIN
                                                    U.S. Magistrate Judge